UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TOTEM FOREST PRODUCTS, INC., & TOTEM STEEL INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> T & D TIMBER PRODUCTS, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )   2:17-cv-00070-JDL |

ORDER ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

This matter comes before the Court on the motion of Totem Forest Products, Inc. and Totem Steel International, Inc. (collectively "Plaintiffs") for a Temporary Restraining Order (ECF No. 4) ("Motion").

I. FACTUAL BACKGROUND

Plaintiffs' Motion and supporting documents establish that the Plaintiffs purchased 6,124 8" x 4' x 16' timber crane mats ("Mats") from the Defendant pursuant to a course of dealing that commenced in early December 2015. The purchases were documented by a written purchase agreement, purchase orders and written terms and conditions of sale. The Defendant confirmed the Plaintiffs' purchase of the Mats through invoices which were sent to the Plaintiffs for payment after delivery of the Mats. Under the purchase agreement, and the terms and conditions of sale, the Defendant agreed to a bailment whereby it would store the Mats for the Plaintiffs and keep the Mats segregated from other materials on the Defendants' property. The

Defendant agreed to load out the Mats for shipment to the Plaintiffs' customers when directed by the Plaintiffs.

On November 30, 2016, the Plaintiffs' director of operations visited the Defendants' business location in Biddeford. At that visit, the Defendants' president pointed out over 4,200 Mats as the Plaintiffs' inventory which were segregated from the Defendant's other materials at the Biddeford location. On December 9, 2016, the Defendants' president confirmed that the inventory of Mats belonging to the Plaintiffs was at locations in Biddeford, Jefferson, Lyman and Lincoln as of December 5, 2016. The Plaintiffs made additional purchases of Mats in December 2016 to bring the total to 6,214.

On February 1, 2017, the Defendant's president informed the Plaintiffs' director of operations that the Defendants' business operations had been frozen by the IRS. The Defendant has not allowed the Plaintiffs to inspect the Plaintiffs' inventory of Mats, and has not made the Mats available for shipment to the Plaintiffs' customers since that time. On February 13, 2017, the Defendant notified the Plaintiffs that the Defendant was in the process of filing for bankruptcy protection. On February 14, 2017, the Plaintiffs' director of operations flew in from Portland, Oregon to inspect the Plaintiffs' Mats, but was refused access to the Defendants' facility in Lyman. He then drove to Biddeford, and observed from the street that the Mats which were identified to him on November 30, 2016 had been relocated.

The Plaintiffs filed their complaint on February 23, 2017 together with its motion for a temporary restraining order, supported by the Declaration of Trevor

Sarazin. Notice of the Plaintiffs' Motion was provided to the Defendant's registered agent.

## II. LEGAL ANALYSIS

In considering a request for a temporary restraining order, the court must determine: "(1) the movant's likelihood of success on the merits; (2) whether and to what extent the movant would suffer irreparable harm if the request were rejected; (3) the balance of hardships between the parties; and (4) any effect that the injunction or its denial would have on the public interest." *Wicked Good Charcoal, Inc. v. Ranch-T, LLC*, 2015 U.S. Dist. LEXIS 173255, at *2-3 (D. Me. Dec. 30, 2015) (quoting *Diaz-Carrasquillo v. Garcia-Padilla*, 750 F.3d 7, 10 (1st Cir. 2014)).

### 1. Likelihood of Success on the Merits

I conclude at this preliminary stage that the Plaintiffs have established a likelihood of success on the merits related to the Plaintiffs' breach of contract, conversion and trespass to personal property claims. The Plaintiffs purchased the Mats from the Defendant pursuant to written agreements whereby the Defendant also agreed to store the Mats for the Plaintiffs separately from other materials until the Plaintiffs needed to ship them to the Plaintiffs' customers. The Defendant identified the Mats as having been sold to, and stored for the Plaintiffs. The Defendant has relocated the bulk of the Mats that were in Biddeford, and refused to allow the Plaintiffs director of operations to inspect the Mats.

### 2. Irreparable Harm

The Plaintiffs will suffer irreparable harm absent a temporary restraining order. The Defendant is likely insolvent, has represented that its business has been

3

frozen by the IRS, and has threatened to file bankruptcy. The Mats were "entrusted" to the Defendant by the Plaintiffs, and the Defendant is a merchant who deals in the same kind of goods. Hence, the Defendant arguably has the power to transfer title to the Mats to a buyer in the ordinary course of business under the Uniform Commercial Code. *See* 11 M.R.S. § 2-403(2).

### 3. Balance of Hardships

The balance of hardships weighs in the Plaintiffs' favor. Absent a temporary restraining order, the Plaintiffs could lose over $2.1 million worth of Mats that they bought and paid for. Conversely, the order will do no more harm to the Defendant than what it agreed to do in its written agreements.

### 4. Public Interest

The public interest favors granting the injunction. "[T]here is a strong public interest in fair dealing and the solemnity of contracts; if commerce is to function in our capitalistic system, entrepreneurs must play by the rules." *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 916 (1st Cir. 1989).

### 5. Security

Rule 65(c) of the Federal Rules of Civil Procedure provides that a court may only issue a preliminary injunction or temporary restraining order if the movant gives security for the damages that might be sustained, if the order is entered wrongfully. The Court has discretion to determine the amount of the security. *Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978, 987 (1st Cir. 1982) (reversed on other grounds).

In exercising this discretion, the Court considers the likely harm to the party enjoined. The chance that the Defendant will be harmed by the requested injunction is remote. The Plaintiffs request that the Court order the Defendant to do what it agreed to do in the first place, i.e. segregate the Plaintiffs' Mats, account for the Mats' whereabouts, not move or sell the Mats, and let the Plaintiffs inspect the Mats. A bond in the amount of $1,000 is sufficient. *See, e.g., Waldron v. George Weston Bakeries, Inc.*, 575 F. Supp. 2d 271, 279 (D. Me. 2008) (bond of $1,000 sufficient when likelihood of harm to Defendant from injunction is remote).

### III.  CONCLUSION

For the reasons stated above, the Motion for Temporary Restraining Order and Motion for Preliminary Injunction (ECF No. 4) is **GRANTED** and I hereby **ORDER** that: Defendant T & D Timber Products, LLC and its officers, members, managers, agents, servants, employees, attorneys, and any and all persons in active concert or participation with them who receive notice of such order, directly or otherwise ("Enjoined Parties"), are temporarily enjoined as follows.

      A.    The Enjoined Parties are enjoined from selling, leasing, disposing of, relocating, or otherwise using for the Enjoined Parties' benefit 6,124 8" x 4' x 16' timber crane mats ("Mats") that were purchased by the Plaintiffs from the Defendant, unless otherwise agreed in writing by the Plaintiffs.

      B.    The Enjoined Parties shall provide the Plaintiffs and/or the Plaintiffs' agents, attorneys and employees with reasonable access to any location where the Mats are currently being stored, and shall provide prompt and

commercially reasonable information to the Plaintiffs regarding the present whereabouts or disposition of the Mats, and

   C. The Enjoined Parties shall keep the Mats segregated and separate from other personal property at any location where they are being stored.

   D. The Court determines that a bond of $1,000 is sufficient security pursuant to Fed. R. Civ. P. 65(c).

   The Clerk shall schedule a conference call to discuss scheduling and briefing on the Plaintiffs' motion for a preliminary injunction.

**SO ORDERED.**

Dated this 24th day of February 2017

               **/s/ JON D. LEVY**
               **U.S. DISTRICT JUDGE**